IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

U.S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS
**FILED**
APR 25 2024
IN OPEN COURT
TAMMY H. DOWNS
By: _____
DEPUTY CLERK

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | No. 4:23CR00101-BSM |
| ) | |
| CANDACE CHAPMAN SCOTT ) | |

**PLEA AGREEMENT**

The United States Attorney for the Eastern District of Arkansas, Jonathan D. Ross, by and through Amanda Jegley, Assistant United States Attorney, Michael Gordon, First Assistant United States Attorney, and Candace Chapman Scott, the defendant, represented by the undersigned counsel, hereby agree to the following terms and conditions in connection with the above-referenced proceedings.

1. **GUILTY PLEA:** The defendant will enter a plea of guilty to Conspiracy to Commit Mail Fraud (Count 1), a violation of Title 18, United States Code, Sections 1341 and 1349; and Interstate Transportation of Stolen Property (Count 12), a violation of Title 18, United States Code, Section 2314, as set forth in the Indictment. The United States agrees to move for dismissal of the remaining counts against the defendant in this matter upon acceptance of the guilty plea. This is a Federal Rule of Criminal Procedure 11(c)(1)(B) plea agreement.

2. **ELEMENTS OF THE CRIME:** The parties agree the elements of Count 1 (Conspiracy to Commit Mail Fraud) to which the defendant will plead guilty are:

    A. Between in or about October 2021, through on or about July 15, 2022, two or more people reached an agreement or came to an understanding to commit the crime of mail fraud;

   B.  The defendant voluntarily and intentionally joined in the agreement, either at the time it was first reached or at some later time while it was still in effect; and

   C.  At the time the defendant joined in the agreement, the defendant knew the purpose of the agreement.

The parties agree the elements of Count 12 (Interstate Transportation of Stolen Property) to which the defendant will plead guilty are:

   A.  Human body parts and fetal remains were stolen;

   B.  Human body parts and fetal remains had a value of $5,000 or more;

   C.  After the human body parts and fetal remains were stolen, the defendant moved or caused them to be moved across a state line; and

   D.  At the time the defendant moved or caused the human body parts and fetal remains to be moved across a state line, she knew that they had been stolen.

The defendant agrees that she is guilty of the offenses charged and that each of these elements is true.

  3.  **PENALTIES**:

   A.  <u>STATUTORY PENALTIES</u>: The penalty for the charge set forth in Count 1 is not more than 20 years' imprisonment, a fine of not more than $250,000, not more than 3 years' supervised release, and a $100 special assessment. The penalty for the charge set forth in Count 12 is not more than 10 years' imprisonment, a fine of not more than $250,000, not more than 3 years' supervised release, and a $100 special assessment.

   B.  <u>SUPERVISED RELEASE</u>: Supervised release is a period of time following imprisonment during which the defendant will be subject to various restrictions and requirements. The defendant understands that if the defendant violates one or more of the conditions of any

supervised release imposed, the defendant may be returned to prison for all or part of the term of supervised release, which could result in defendant serving a total term of imprisonment greater than the statutory maximum stated above.

    4.    **WAIVERS**: The defendant acknowledges that she has been advised of and fully understands the nature of the charges to which the plea is offered, the mandatory minimum penalty provided by law, if any, and the maximum possible penalty provided by law. The defendant further understands that by entering into this Agreement and Addendum, she is waiving certain constitutional rights, including, without limitation, the following:

    A.    The right to appeal or collaterally attack, to the full extent of the law, all non-jurisdictional issues, including any forfeiture or restitution order, as follows:

    (1)    the defendant waives the right to appeal all non-jurisdictional issues including, but not limited to, any issues relating to pre-trial motions, hearings and discovery and any issues relating to the negotiation, taking or acceptance of the guilty plea or the factual basis for the plea, including the sentence imposed or any issues that relate to the establishment of the Guideline range, except that the defendant reserves the right to appeal claims of prosecutorial misconduct and the defendant reserves the limited right to appeal the substantive reasonableness of the sentence of imprisonment if the sentence is above the Guideline range that is established at sentencing and if the defendant makes a contemporaneous objection;

    (2)    the defendant expressly acknowledges and agrees that the United States reserves its right to appeal the defendant's sentence under Title 18, United States Code, Section 3742(b) and *United States v. Booker*, 543 U.S. 220 (2005);

    (3)    the defendant waives all rights to collaterally attack the conviction and sentence in any post-conviction proceeding, including one pursuant to Title 28, United States

Code, Section 2255, except for claims based on ineffective assistance of counsel or prosecutorial misconduct;

(4) the defendant waives the right to have the sentence modified pursuant to Title 18, United States Code, Section 3582(c)(2);

(5) the defendant waives the right to appeal the Court's determination of the amount of restitution and subsequent restitution order, if any; and

(6) the defendant waives the right to appeal the Court's determination of any forfeiture issues and subsequent forfeiture order, if any.

B. The right to plead not guilty or to persist in that plea if it has already been made, and the right to a speedy and public trial before a jury;

C. The right to be presumed innocent and to have the burden of proof placed on the United States to establish guilt beyond a reasonable doubt;

D. The right to confront and cross examine witnesses;

E. The right to testify in her own behalf if the defendant so chooses, or, the right to remain silent and not be compelled to testify, and to have that choice not used against the defendant; and

F. The right to call witnesses and to require those witnesses to appear by issuing subpoenas.

G. Pursuant to Federal Rule of Criminal Procedure 11(b)(1)(O), the defendant understands that upon conviction, a defendant who is not a United States citizen may be removed from the United States, denied citizenship, and denied admission to the United States in the future.

5. **STIPULATIONS:** The United States and the defendant stipulate to the following:

      A.     The parties agree that the base offense level is 7 pursuant to U.S.S.G. § 2B1.1(a)(1).

      B.     The parties agree that, pursuant to U.S.S.G. § 2B1.1(b)(1)(B), the offense level shall be increased by at least 2 levels because the loss exceeded $6,500, and the parties agree the amount of loss shall be determined by the Court at sentencing.

      C.     The parties agree that, pursuant to U.S.S.G. § 2B1.1(b)(4), the offense level shall be increased by 2 levels because the offense involved receiving stolen property, and the defendant was in the business of receiving and selling stolen property.

      D.     The parties agree that, pursuant to U.S.S.G. § 3A1.1(b)(1), the offense level shall be increased by 2 levels because the defendant knew or should have known that a victim of the offense was a vulnerable victim.

      E.     The parties agree that, pursuant to U.S.S.G. § 3A1.1(b)(2), the offense level shall be increased by 2 levels because the offense involved a large number of vulnerable victims.

      F.     The parties agree that, pursuant to U.S.S.G. § 3B1.3, the offense level shall be increased by 2 levels because the defendant abused a position of private trust.

      G.     The parties agree that neither party will be prevented from seeking a variance or departure at sentencing.

      H.     The defendant is eligible for a two-level reduction for acceptance of responsibility unless the defendant takes any action between the entry of the guilty plea and imposition of the sentence that is inconsistent with acceptance of responsibility, including illegal drug use. If the offense level is 16 or greater, the determination of whether the defendant is eligible for a third level reduction for acceptance of responsibility will be made by the United States at the time of sentencing.

I.      The defendant specifically waives any and all challenges to the searches, seizures, arrests, statements, and forfeitures that have taken place as of the date of the execution of this plea agreement by the defendant in this investigation by any entity, and in any forum where the offense may be pursued and/or forfeiture may be sought. The defendant will assist in executing any requested waiver of challenge and relinquishment of rights to any and all assets that have been seized to date in this investigation by any participating agency or department, in any forum where the forfeiture may be sought.

J.      The defendant stipulates that the following facts are true: The University of Arkansas for Medical Sciences (UAMS) received donated cadavers through the Anatomical Gift Program, which after use were to be cremated and returned to UAMS for final disposition. BUSINESS 1 is a Class B, C, and D mortuary and offered transportation, embalming, and cremation services to commercial entities, including hospitals and funeral homes. In 2014, UAMS contracted with BUSINESS 1 for cremation services as set forth in the Indictment. Defendant CANDACE CHAPMAN SCOTT (SCOTT) was employed at BUSINESS 1 and did not hold an active mortician's license. SCOTT knew that she was not authorized to harvest organs, tissues, or bones, or dismember a corpse for any purpose, including personal financial gain.

On or about October 28, 2021, SCOTT contacted Jeremy Pauley (Pauley), a resident of Pennsylvania, through Facebook and introduced herself as a mortician at a trade service mortuary, explaining that the mortuary was contracted through UAMS in Little Rock to cremate medical cadavers. SCOTT then asked Pauley if he knew anyone interested in purchasing an embalmed human brain. SCOTT and Pauley then negotiated the purchase of human body parts that SCOTT stole from UAMS. Pauley instructed SCOTT how to package the human body parts and paid

SCOTT $1,200 through PayPal. SCOTT then transferred the money to her Centennial Bank account in Arkansas.

Between on or about October 31, 2021, through on or about December 31, 2021, SCOTT agreed to sell additional stolen human body parts to Pauley, as set forth in Count 1 of the Indictment. During that time period, SCOTT sent Pauley fifteen boxes containing stolen human body parts through the United States Postal Service (USPS), and she received approximately $5,675 in payments from Pauley.

On or about December 15, 2021, SCOTT asked Pauley through Facebook Messenger if he would be interested in purchasing a fetus. SCOTT explained to Pauley "we get stillbirths all the time from UAMS and basically give the parents back a pinch of ashes from a whole person we cremated – do you collect fetuses?" On or about January 8, 2022, SCOTT informed Pauley through Facebook Messenger that she received a fetus for cremation and sent pictures of the fetus to Pauley, and Pauley instructed SCOTT to cold pack and ship overnight to preserve the fetus. Pauley agreed to pay shipping and expenses. On or about January 13, 2022, SCOTT sent stolen fetal remains through USPS from Little Rock, Arkansas, to Pauley in Enola, Pennsylvania. On or about January 13, 2022, Pauley paid SCOTT $650.00 through PayPal.

On or about February 5, 2022, BUSINESS 2, a funeral home in Little Rock, Arkansas, was authorized to dispose of fetal remains by means of cremation, and BUSINESS 2 then transferred those fetal remains to BUSINESS 1 for cremation. On or about February 9, 2022, SCOTT informed Pauley through Facebook Messenger that she had another fetus and offered to sell it to Pauley for $300.00. SCOTT sent photos to Pauley through Facebook Messenger. On or about February 9, 2022, Pauley paid SCOTT $300.00. On or about February 10, 2022, a burial-transit/cremation permit record was signed by a representative of BUSINESS 1, asserting the fetal remains it

received from BUSINESS 2 had been cremated. On or about February 16, 2022, SCOTT shipped the fetal remains through USPS from Little Rock, Arkansas to Pauley in Enola, Pennsylvania.

Between on or about May 11, 2022, and June 30, 2022, SCOTT agreed to sell additional stolen human body parts and human remains to Pauley in an amount totaling approximately $5,650. During that time period, SCOTT shipped two boxes containing stolen human remains through USPS from Arkansas to Pauley in Thompson, Pennsylvania. Pauley paid SCOTT $1,650 through PayPal for the stolen human body parts.

On July 13, 2022, a search warrant was executed by the Federal Bureau of Investigation (FBI) at SCOTT's residence in Little Rock, Arkansas. Numerous stolen body parts were located at SCOTT's residence in boxes and trash bags, including a human brain, heart, skullcap, kidneys, livers, hands, and a female pelvis with femurs and flesh intact. During execution of the search warrant, SCOTT was interviewed and admitted that she removed stolen human body parts from her work, transported them in trash bags to her home, and shipped the stolen human body parts to Pauley in Pennsylvania. SCOTT admitted Pauley paid her for the stolen human body parts through Paypal and that she communicated with him through Facebook. In total, between on or about October 31, 2021 through on or about July 15, 2022, SCOTT shipped 24 boxes containing stolen human remains through USPS from Arkansas to Pauley in Pennsylvania and received payment in the aggregate sum of $10,625.00.

K.  The parties understand that the Court is not bound by these stipulations. The defendant further understands that if the Court does not accept this Plea Agreement, then the defendant is not entitled to withdraw the guilty plea or otherwise be released from the defendant's obligations under this Agreement and Addendum.

6. **SENTENCING GUIDELINES:** It is specifically understood by the defendant that the Sentencing Guidelines are not mandatory but are advisory, and that the Court is to consult them in determining the appropriate sentence. The defendant understands that the determination of the applicability of the Guidelines and of the appropriate sentence will be made by the Court. The defendant is aware that any estimate of the probable sentencing range under the Sentencing Guidelines that the defendant may have received from the defendant's counsel, the United States, or the Probation Office, is merely a prediction, not a promise, and is not binding on the United States, the Probation Office, or the Court. The United States makes no promise or representation concerning what sentence the defendant will receive and the defendant cannot withdraw a guilty plea, or otherwise avoid the defendant's obligations under this Agreement and Addendum, based upon the actual sentence imposed by the Court. The parties understand and agree that if the guideline range is greater or less than the defendant or the United States expected it to be, and/or the sentence imposed by the Court is greater or lesser than anticipated, neither the defendant nor the United States will be allowed to withdraw, nor request withdrawal of, the guilty plea, nor be excused from any obligation under this Agreement and Addendum.

7. **ALLOCUTION:** The United States reserves the right to bring any and all facts which it believes are appropriate to the attention of the Court.

8. **COOPERATION IN THE SENTENCING PROCESS:**

    A. The defendant agrees to truthfully provide all information to the Probation Office as is needed for preparation of the pre-sentence report, including, but not limited to, criminal history information. The defendant shall voluntarily provide a complete and truthful written accounting of the defendant's criminal history to the Probation Office.

  B. The defendant agrees to execute all waivers necessary for the preparation of the pre-sentence report.

  C. The defendant understands and acknowledges that the defendant's obligation of disclosure regarding criminal history is not limited to arrests and convictions reported in computer databases, but also requires the defendant to disclose all arrests and/or convictions, including any juvenile matters, regardless of whether the defendant believes the arrest/conviction counts under the Sentencing Guidelines.

  D. The defendant is required to comply with these obligations no later than the expiration of the date on which objections to the pre-sentence report are due.

9. **FINANCIAL MATTERS:**

  A. <u>FINANCIAL STATEMENT</u>: The defendant agrees to fully and truthfully complete a Financial Statement provided by the United States Probation Office.

  B. <u>GENERAL</u>: The defendant agrees that, unless the Court specifically states otherwise, any restitution, fine, or forfeiture imposed by the Court in this case will be due and payable immediately and, therefore, the defendant consents to immediate enforcement by the United States by any means, including enforcement under Title 18, United States Code, Section 3613, and the Treasury Offset Program. If the Court imposes a payment schedule, then the defendant agrees that the schedule will represent a minimum payment obligation and does not preclude the United States from pursuing any other means by which to satisfy the defendant's full and immediately enforceable financial obligations. The defendant also understands that the defendant has a continuing obligation to pay in full as soon as possible any financial obligation imposed by the Court. Further, the defendant understands and agrees that, under Title 11, United States Code, Section 523(a)(7) and other pertinent bankruptcy laws, any restitution, fine, or

forfeiture imposed by the Court cannot be discharged in bankruptcy; accordingly, the defendant agrees not to attempt to discharge these obligations in any current or subsequent bankruptcy proceeding.

      C.     FINES: The defendant understands that unless the Court determines that the defendant is financially unable to pay a fine, the Court must impose a fine pursuant to the Sentencing Reform Act of 1984. The defendant agrees to pay a fine in the amount of $10,625.00.

      D.     SPECIAL PENALTY ASSESSMENT: The defendant agrees to pay to the United States a special assessment of $100.00 per count, as required by Title 18, United States Code, Section 3013. This special assessment is to be paid by bank cashier's check or money order as directed by the Court prior to appearing for sentencing. Cashier's checks or money orders should be made payable to "Clerk, United States District Court." The defendant agrees to provide a receipt as evidence of fulfillment of this obligation at the time of sentencing.

      E.     RESTITUTION: The defendant acknowledges that restitution is mandatory pursuant to Title 18, United States Code, Section 3663A. The defendant agrees to the entry of an order of restitution for the full amount of the victims' losses, regardless of whether charges relating to such losses will be excluded or dismissed as part of this plea agreement. The defendant agrees that any financial obligation imposed by the Court, including a restitution order and/or implementation of a fine, is due and payable immediately. In the event the Court imposes a schedule for payment of restitution, the defendant agrees that such a schedule represents a minimum payment obligation and does not preclude the United States Attorney's Office from pursuing any other means by which to satisfy the defendant's full and immediately enforceable financial obligation. The defendant understands that the defendant has a continuing obligation to pay in full as soon as possible any financial obligation imposed by the Court. The United States

and the defendant are negotiating the amount of restitution. The United States and the defendant agree that any additional claims for restitution shall be determined by the Court.

      F.    <u>FINANCIAL INFORMATION</u>: Within 10 days of the execution of this plea agreement, at the request of the USAO, the defendant agrees to execute and submit: (1) a Tax Information Authorization form; (2) an Authorization to Release Information; (3) a completed financial disclosure statement; and (4) copies of financial information that the defendant submits to the U.S. Probation Office. The defendant understands that compliance with these requests will be taken into account when the United States makes a recommendation to the Court regarding the defendant's acceptance of responsibility. The defendant expressly authorizes the United States Attorney's Office to obtain a credit report on him. The defendant agrees to provide waivers, consents or releases requested by the United States Attorney's Office to access records to verify the defendant's financial information. The defendant agrees to provide updates with any material changes in circumstances, as described in 18 U.S.C. § 3664(k), which occur prior to sentencing, within seven days of the event giving rise to the changed circumstances. Prior to sentencing, the defendant agrees to notify the Assistant United States Attorney and the Financial Litigation Unit of the United States Attorney's Office for the Eastern District of Arkansas before the defendant transfers any interest in property with a value exceeding $1,000 owned directly or indirectly, individually or jointly, by the defendant, including any interest held or owned under any name, including trusts, partnerships, and corporations. The defendant certifies that he/she has made no transfer of assets or property for the purpose of (1) evading financial obligations created by this Agreement; (2) evading obligations that may be imposed by the Court; nor (3) hindering efforts of the USAO to enforce such financial obligations. Moreover, the defendant promises that he/she will make no such transfers in the future.

10. **DOUBLE JEOPARDY AND SUCCESSIVE PROSECUTION**: The United States Attorney for the Eastern District of Arkansas will bring no further charges against the defendant for any acts or conduct arising out of the events described in the Indictment, which is the subject of this action, unless the defendant breaches this Agreement and Addendum.

11. **RECORDS**: The defendant hereby waives all rights, whether asserted directly or by a representative, to request or receive from any department or agency of the United States any records pertaining to the investigation or prosecution of this case, including without limitation any records that may be sought under the Freedom of Information Act, 5 U.S.C. Section 552, or the Privacy Act of 1974, 5 U.S.C. Section 552a.

12. **ASSET FORFEITURE:** The parties agree that there is no property to forfeit in this case.

13. **CIVIL CLAIMS BY THE GOVERNMENT:** Except to the extent otherwise expressly specified herein, this Agreement and Addendum does not bar or compromise any civil or administrative claim pending or that may be made against the defendant, including but not limited to tax matters.

14. **EFFECT OF THE DEFENDANT'S BREACH OF PLEA AGREEMENT AND ADDENDUM**:

    A.    The defendant acknowledges and understands that if the defendant violates any term of this Agreement and Addendum, engages in any further criminal activity prior to sentencing, or fails to appear for any subsequent proceeding including sentencing, then the United States shall have, in addition to all other rights and remedies otherwise available, the right to:

        (1)    terminate this Agreement and Addendum; or

        (2)    proceed with this Agreement and Addendum and

     (a) deny any and all benefits to which the defendant would otherwise be entitled under the terms of this Agreement and Addendum; and/or

     (b) advocate for any sentencing enhancement that may be appropriate.

  B. In the event the United States elects to terminate this Agreement and Addendum, the United States shall be released from any and all obligations hereunder. The defendant acknowledges and understands that the agreement of the United States to dismiss any charge is conditioned upon final resolution of this matter. If this Agreement and Addendum is terminated or if the defendant's conviction ultimately is overturned, then the United States retains the right to reinstate any and all dismissed charges and to file any and all charges which were not filed because of this Agreement and Addendum.

  C. The defendant hereby knowingly and voluntarily waives any defense based upon the applicable statute of limitations and/or the Speedy Trial Act, for any charges reinstated or otherwise filed against the defendant as a result of defendant's breach of this Agreement and Addendum, so long as the United States initiates any otherwise time barred action within one year of termination or revocation of this Agreement and Addendum.

  D. In the event that the Agreement and Addendum is terminated or if the defendant successfully moves to withdraw his/her plea, any statement made by the defendant in negotiation of, or in reliance on this Agreement and Addendum, including any statements made in the course of a proffer, this Agreement, the stipulations in paragraph 5 of this Agreement, and the plea colloquy:

     (1) may be used in the United States' case in chief and to cross examine the defendant should he/she testify in any subsequent proceeding; and/or

(2)     any leads derived therefrom may be used by the United States. The defendant waives any and all rights to the contrary and shall assert no claim under the United States Constitution, any statute, or any rule of procedure or evidence to the contrary, including Federal Rule of Evidence 410 and Federal Rule of Criminal Procedure 11(f). The defendant has been advised of her rights pursuant to Federal Rule of Evidence 410 and Federal Rule of Criminal Procedure 11(f) and waives these rights.

15. **PARTIES:** This Agreement and Addendum is binding only upon the United States Attorney's Office for the Eastern District of Arkansas and the defendant. It does not bind any United States Attorney outside the Eastern District of Arkansas, nor does it bind any other federal, state, or local prosecuting, administrative, or regulatory authority.

16. **MISCELLANEOUS:**

   A.   MODIFICATION: No term or provision contained herein may be modified, amended, or waived except by express written agreement signed by the party to be bound thereby.

   B.   HEADINGS AND CAPTIONS: Subject headings and captions are included herein for convenience purposes only and shall not affect the interpretation of this Agreement and Addendum.

   C.   WAIVER: No waiver of a breach of any term or provision of this Agreement and Addendum shall operate or be construed as a waiver of any subsequent breach or limit or restrict any other right or remedy otherwise available. Any waiver must be expressly stated in writing signed by the party to be bound thereby.

   D.   RIGHTS AND REMEDIES CUMULATIVE: The rights and remedies of the United States expressed herein upon any breach hereunder by the defendant are cumulative

and not exclusive of any rights and remedies otherwise available to the United States in the event of any breach of this Agreement and Addendum by the defendant.

   E. <u>JOINT NEGOTIATION</u>: This Agreement and Addendum has been mutually negotiated by the parties hereto, and any uncertainty or ambiguity existing herein shall not be interpreted against any party by reason of its drafting of this Agreement and Addendum, but instead shall be interpreted according to the application of the general rules of interpretation for arms-length agreements.

  17. **NO OTHER TERMS:** This document and the Addendum completely reflect all promises, agreements and conditions made between the parties, constitute the entire agreement between the parties and supersedes any and all prior agreements or understandings between the parties, oral or written, with respect to the subject matter hereof.

  18. **APPROVALS AND SIGNATURES**:

   A. <u>DEFENDANT</u>: The defendant has read this Agreement and Addendum and carefully reviewed every part of it with her attorney. The defendant understands and voluntarily agrees to the terms and condition of this Agreement and Addendum. Further, the defendant has consulted with her attorney and fully understands her rights with respect to the provisions of the United States Sentencing Guidelines which may apply to this case. No other promises or inducements have been made to the defendant, other than those expressly contained in this Agreement and Addendum. In addition, no one has threatened or forced the defendant in any way to enter into this Agreement and Addendum. The defendant further acknowledges that the defendant has entered into this Agreement and Addendum, consciously and deliberately, by the defendant's free choice, and without duress, undue influence or otherwise being forced or compelled to do so, and this Agreement and Addendum constitutes the legal, valid and binding

obligation of the defendant, fully enforceable against defendant in accordance with its terms. Finally, the defendant is satisfied with the representation of his/her attorney in this case.

    B.  DEFENSE COUNSEL: Defense counsel acknowledges that he is the attorney for the defendant, and that he has fully and carefully discussed every part of this Agreement and Addendum with the defendant. Further, defense counsel has fully and carefully advised the defendant of the defendant's rights, of possible defenses, and of the consequences of entering into this Agreement and Addendum, including the possible consequences of not complying with this Agreement and Addendum. To counsel's knowledge, the defendant's decision to enter into this Agreement and Addendum is an informed and voluntary decision.

DATED this ___25th___ day of ___April___, 2024.

              JONATHAN D. ROSS
              United States Attorney

              By: AMANDA JEGLEY
              Assistant United States Attorney
              Bar No. 2010045
              Post Office Box 1229
              Little Rock, Arkansas 72203
              (501) 340-2600
              Amanda.jegley@usdoj.gov

CANDACE CHAPMAN SCOTT
Defendant

GEORGE MORLEDGE
Attorney for Defendant